IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES J. ABLAN and BEACON REALTY CAPITAL, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, a Delaware corporation, and MERRILL LYNCH MORTGAGE LENDING, INC., a Delaware corporation,<br><br>Defendants. | Case No. 11 C 4493<br><br>Judge Charles Norgle<br>Magistrate Judge Daniel G. Martin |

To: The Honorable Charles Norgle
United States District Court Judge

## REPORT AND RECOMMENDATION

Daniel G. Martin, United States Magistrate Judge

For the reasons and to the extent stated below, Defendants' Motion to Strike Plaintiffs' Damages Claim [106] should be granted.

## BACKGROUND

In November 2006, Defendant Merrill Lynch Mortgage Lending, Inc. ("MLML") loaned approximately $103 million to Tax Strategies Group, LLC ("TSG") in connection with TSG's purchase of seven CarMax properties (the "CarMax II Portfolio."). Prior to CarMax II, Plaintiffs James Ablan (Ablan) and Beacon Realty Capital ("Beacon") served as TSG's exclusive financing representatives. By the time of CarMax II, TSG and Plaintiffs disagreed about whether that representation continued. Despite that disagreement, MLML paid Plaintiffs an incentive fee known as a "subservicing buyout." MLML paid Ablan's requested rate of 12.5 basis points, or 0.125% for each of the seven loans. Plaintiffs filed this lawsuit almost five years later on July 1, 2011.

On March 7, 2014, two business days before the close of fact discovery, Plaintiffs amended their Rule 26(a)(1) disclosures to add for the first time a claim that MLML should have paid Plaintiffs a 0.25% subservicing fee instead of a 0.125% subservicing fee with respect to the CarMax II transaction. The difference between what Plaintiffs allege Beacon should have received from MLML for the subservicing buyout with respect to the CarMax II transaction and what Beacon actually received is $129,531.25. Defendants' current motion argues that the Court should strike Plaintiffs' amendment because (1) the uncontroverted record shows Plaintiffs were paid the amount they requested and (2) Defendants have been prejudiced by the unjustified tardiness of the amendment. Because the Court concludes that, under the circumstances, it is appropriate to strike Plaintiffs' claim for an additional CarMax II subservicing fee as untimely and prejudicial, the Court does not reach the first issue.

## **DISCUSSION**

Rule 26(a)(1) requires, among other things, the disclosure of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). "A party must make its initial disclosures based on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E). Rule 26 also requires a party to supplement or correct its disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37 provides that a party who fails to provide information required by Rule 26(a) or (e) is not, unless such failure is substantially justified or is harmless, permitted to use that information to supply evidence on a motion or at a trial. Fed. R. Civ. P. 37(c)(1). This sanction is "'automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" David v. Caterpillar, 324 F.3d 851, 857 (7th Cir. 2003) (quoting Salgado v.

Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998)). The determination of whether a failure is harmless or justified is left to the broad discretion of the district court. Id. The district court's discretion should be guided by several factors in deciding whether non-compliance with Rule 26(a) is harmless: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." Id.

Under Rule 26(a)(1)(A)(iv), Plaintiffs were required to disclose their claim that MLML should have paid Plaintiffs a 0.25% subservicing fee instead of a 0.125% subservicing fee with respect to the CarMax II transaction. The deadline to exchange Rule 26(a)(1) initial disclosures was October 29, 2012. (Docs. 60, 64). Plaintiffs did not disclose their damages claim for a 0.25% buyout fee for the CarMax II transaction by October 29, 2012. Rather, they waited more than 16 months later, until March 7, 2014, to make the disclosure. Fact discovery closed on March 11, 2014. (Doc. 97).

Having considered the relevant factors, the Court recommends striking Plaintiffs' claim for additional CarMax II subservicing buyout fees. First, the Court cannot conclude that Plaintiffs' late disclosure was justified. Plaintiffs do no offer any explanation for why they could not have disclosed the claim for an additional CarMax II subservicing fee by the October 29, 2012 deadline. Plaintiffs cannot plausibly claim that they were not aware of their claim for an additional CarMax II subservicing fee until March 7, 2014. The fact that Ablan was paid 0.125% instead of 0.25% has been known to him for over seven years.

Plaintiffs say they decided to amend their disclosures based on what they learned during the deposition of Scott Stein ("Stein") of MLML on February 27, 2014. Plaintiffs state that "[f]ollowing Stein's deposition, Plaintiffs reviewed their Rule 26 disclosures, as well as the discovery in this action, and made a determination that their Rule 26 disclosures should be amended to

include a claim for the additional subservicing buy-out fee of 0.125%." (Doc. 115 at 5). The problem with this position is that Plaintiffs have not identified anything they learned from Stein during his deposition that they did not know beforehand. Defendants say that "[t]here is not a single statement in Mr. Stein's deposition indicating Merrill Lynch was required to pay Plaintiffs a subservicing fee, that Merrill Lynch was required or promised to pay Plaintiffs a fee of 25 basis points, or that Plaintiffs should have received a larger fee than Plaintiffs had request and [were] paid." (Doc. 117 at 7). Consequently, Stein's deposition did not substantially justify Plaintiffs' delay in asserting a new category of damages. Moreover, "[t]his is not a case where the disclosure was late by a trivial amount of time." Musser v. Gentiva Health Services, 356 F.3d at 758-59 (7th Cir. 2004). Plaintiffs' disclosure was over 16 months late.

Plaintiffs have also not shown that their failure to timely disclose their claim for additional CarMax II subservicing buyout fees was harmless. Plaintiffs' new damages claim with respect to the CarMax II transaction was disclosed two business days before the fact discovery cut-off. Defendants argue that Plaintiffs' late disclosure of this new damages claim is prejudicial because coming so close to the fact discovery cut-off they were denied the ability to take discovery on the claim. Specifically, Plaintiffs' late disclosure was prejudicial because it was served after the deposition of Ablan–the person allegedly entitled to the additional fees.

As to prejudice and surprise, Plaintiffs argue that their violation should be ignored because the documents relating to the CarMax II fee were produced in discovery, Plaintiffs' initial disclosures stated that they "reserve the right to modify the damages sought herein," and Defendants did not inquire into Plaintiffs' damages in their interrogatories or during Ablan's deposition. Plaintiffs' arguments are unpersuasive. The prejudice is not cured by Plaintiffs' disclosure of documents related to the CarMax II subservicing fee. Those documents indicate only that Plaintiffs received a subservicing fee of 0.125% not that Plaintiffs would claim they were entitled to an additional 12.5

basis points. In fact, Defendants say that the documents Plaintiffs produced "make clear that Plaintiffs were paid precisely the fee they requested and never asked for more" (Doc. 117 at 6). While Plaintiffs are correct that Defendants did not pursue discovery about subservicing fees in interrogatories or at Ablan's deposition, Plaintiffs had not yet disclosed subservicing fees as a category of potential damages. The Court agrees with Defendants that the fact that they did not pursue discovery related to CarMax II subservicing fees confirms how they were prejudiced by Plaintiffs' untimely disclosure. Plaintiffs' claim that their disclosure of a claim for an additional CarMax II subservicing fee could not have surprised Defendants because they "reserve[d] the right to modify the damages sought" in their initial disclosures is also without merit. Such boilerplate language does not alter Plaintiffs' duty to "timely" supplement their Rule 26(a)(1) disclosures. Fed. R. Civ. P. 26(e).

The prejudice to Defendants of learning of a new damages claim two business days before the close of fact discovery is substantial. Defendants pursued their fact and expert discovery based on Plaintiffs' Rule 26(a)(1) initial disclosures and prepared their case with the understanding that Plaintiffs were not seeking a subservicing fee as a category of potential damages. By not timely disclosing their new damages claim, Plaintiffs denied Defendants the opportunity to question Ablan at his deposition about an additional CarMax II subservicing fee as well as the opportunity to develop facts contradicting the claim during discovery. Defendants credibly contend that having missed out on the opportunity to take discovery on the topic, including by deposing Ablan, their ability to contradict any declaration or testimony on the issue presented on summary judgment or at trial will be impacted. The Court concludes that Defendants experienced prejudice by the more than 16-month late disclosure of Plaintiffs' damages claim for the CarMax II transaction.

As to the second factor, Plaintiffs assert that any prejudice to Defendants can be easily negated by their offer to allow Defendants to depose Ablan on the limited issue of this additional

item of damages. Plaintiffs' argument is unconvincing. No good cause has been shown for re-opening discovery and allowing Defendants to re-depose Ablan would only create more delay and cost for them. This over three-year old case needs to come to a resolution in a timely manner. There have been too many extensions to now continue the matter again. (Docs. 64, 80, 84, 97).

Plaintiffs argue that because a trial date has not been set, allowing Defendants to re-depose Ablan on the new damages claim would not disrupt trial. The lack of a trial date does not render Plaintiffs' delay harmless. If that were the determining factor, "most violations of Rule 26 would be outside the reach of Rule 37." Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd., 2008 WL 1883435, at *6 (N.D. Ill. April 28, 2008). Although a trial date has not yet been set in this matter, inclusion of Plaintiffs' new theory of damages would disrupt the orderly conclusion of this case. Fact discovery is closed and expert discovery is to be completed by August 13, 2014. (Doc. 125). A dispositive motion deadline and briefing schedule has been set by the district court, with summary judgment motions due by September 19, 2014. (Docs. 128, 132).

As to the last factor, Defendants argue that Plaintiffs' failure to timely disclose their claim for additional CarMax II subservicing buyout fees was in bad faith. Defendants point out that Plaintiffs received a subservicing fee totaling $129,531.25 (12.5 basis points) for the CarMax II transaction in 2006 and 2007. Thus, Plaintiffs have known for over seven years that they were paid a subservicing buyout fee of 0.125% on CarMax II instead of 0.25%, yet they waited until two business days before fact discovery closed and ten days after Ablan's deposition to disclose this category of damages. Plaintiffs respond that no bad faith or willfulness exists because Defendants have not demonstrated that any documents relating to the damages claim were withheld or that Plaintiffs were asked and failed to respond to any inquiry concerning damages. These actions do not demonstrate a lack of bad faith or willfulness on Plaintiffs' part. Importantly, Plaintiffs never explain why they could not have raised their claim for an additional CarMax II subservicing fee in

a timely manner. While bad faith may not have motivated Plaintiffs, there is a basis for inferring willfulness where Plaintiffs have not offered any explanation for waiting until the end of fact discovery to offer a damages claim they should have known about at the beginning of the case.

**CONCLUSION**

Based on this record, the Court cannot conclude that Plaintiffs' late disclosure was either justified or harmless. Accordingly, Plaintiffs' claim for additional CarMax II subservicing buyout fees should be stricken from their amended Rule 26(a)(1) disclosures.

**E N T E R:**

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: August 8, 2014**