IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES J. ABLAN and BEACON REALTY CAPITAL, INC., an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, a Delaware corporation, and MERRILL LYNCH MORTGAGE LENDING, INC., a Delaware corporation,<br><br>Defendants. | Case No. 11 C 4493<br><br>Magistrate Judge Daniel G. Martin |

To: The Honorable Charles Norgle
United States District Court Judge

## REPORT AND RECOMMENDATION

Daniel G. Martin, United States Magistrate Judge

For the reasons and to the extent stated below, Defendants' Motion for Sanctions for Evidence Spoliation [109] should be granted in part and denied in part.

## BACKGROUND

In 2003, Plaintiffs entered into a Financial Representation Agreement ("FRA") with Tax Strategies Group, LLC ("TSG"). Plaintiffs contend that the FRA made Plaintiffs the "exclusive" broker for TSG in connection with arranging financing for real estate acquisitions and entitled them to receive a commission when TSG obtained such financing (the "CarMax I transaction"). Plaintiff James J. Ablan ("Ablan") acquired a minority membership interest in TSG at the same time the parties entered into the FRA. On June 1, 2006, TSG filed a lawsuit in state court (the "State Court Litigation") against Ablan alleging that he violated the FRA by interfering with TSG's efforts to obtain financing for the acquisition of a group of CarMax dealerships. Ablan filed a counterclaim against TSG and third party complaint against Wayne R. Hannah, the majority member of TSG

alleging, among other things, that: (1) TSG violated the FRA in connection with the CarMax I transaction; (2) TSG and Hannah improperly excluded him from CarMax I and other transactions; and (3) Hannah and other TSG members engaged in misconduct that destroyed the value of Ablan's TSG membership interest. During the State Court Litigation, Ablan requested and received a wide variety of documents from TSG.

Plaintiffs filed this litigation against Defendants on July 1, 2011, while the State Court Litigation was still pending. Defendant Merrill Lynch Mortgage Lending, Inc. provided TSG with first mortgage loans for the CarMax I transaction and the subsequent acquisition of CarMax dealerships. On August 3, 2011, Plaintiffs, TSG and Hannah entered into two settlement agreements to resolve the State Court Litigation. On October 31, 2011, the state court approved the settlement agreements and dismissed the State Court Litigation.

In a letter dated April 9, 2014, Plaintiffs' counsel informed Defendants' counsel that "materials produced by TSG in discovery in the State Court Lawsuit had been disposed of . . . ." (Doc. 118 at 2). Plaintiffs state that "[w]hile this case was pending, Plaintiffs' counsel also learned that Protek, a computer consulting firm that had been retained to assist Ablan in obtaining TSG's email communications, had retained images of TSG's storage drives." Id. Plaintiffs' counsel informed Defendants' counsel about the existence of the TSG storage drives that are in Protek's possession.

Defendants' current motion was originally a motion for evidence spoliation based upon Plaintiffs' representations that the documents they received from TSG in the State Court Litigation no longer existed. After Defendants filed their motion, "Plaintiffs located eight (8) CD-ROMs containing discovery produced to Ablan by TSG in the State Court Litigation." (Doc. 151 at 1-2). On June 26, 2014, over three months after discovery closed, Plaintiffs produced to Defendants the TSG documents contained on the eight (8) CD-ROMs. The CD-ROMs contain over 14,000 pages

of documents. Defendants are no longer seeking sanctions for spoliation. Plaintiffs argue that Defendants' request for sanctions is "render[ed] moot" by their discovery and production of the TSG documents on the eight (8) CD-ROMS in June 2014. (Doc. 118 at 5).

Defendants disagree, arguing that Plaintiffs' tardy production of these documents removes the motion from the spoliation realm and into a failure to timely supplement inquiry. Defendants seek sanctions based on Plaintiffs' failure to timely produce and supplement. Defendants point to two alleged discovery violations by Plaintiffs: (1) Plaintiffs' failure to timely produce 14,000 pages of TSG documents contained on the eight (8) CD-ROMs in their possession and (2) Plaintiffs' failure to produce 350,000 TSG documents in the possession of their vendor, Protek. Defendants contend that Plaintiffs should be sanctioned for their late production by: (1) requiring Plaintiffs to pay Defendants their attorneys' fees in bringing this motion; (2) requiring Plaintiffs to pay Defendants' expert costs associated with reviewing the recently located TSG documents; and (3) barring Plaintiffs from relying on or introducing any of the recently located TSG documents at summary judgment or trial.

## **DISCUSSION**

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under Rule 26(e)(1)(A), a "party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission–must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "Whether a failure to

-3-

comply with Rule 26(a) or (e) is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." Dynegy Marketing and Trade v. Multiut Corp., 648 F.3d 506, 514 (7th Cir. 2011).

Plaintiffs do not argue that their production of the TSG documents after the close of discovery complied with Rule 26. Under Rule 34, Plaintiffs were required to produce responsive documents in their "possession, custody, or control." Rule 26(e) requires a party to timely supplement its discovery responses when a party learns that its response was incomplete or incorrect in some material respect. Plaintiffs initiated this litigation against Defendants while the State Court Litigation was pending and Plaintiffs possessed the documents produced by TSG during that lawsuit. Plaintiffs were then in possession of the eight (8) CD-ROMs containing TSG's documents for nearly three years before disclosing them to Defendants. By letter dated April 9, 2014 and after fact discovery closed on March 11, 2014, Plaintiffs' counsel informed defense counsel that counsel for Ablan destroyed nearly all of the documents he received from TSG in the State Court Litigation shortly after its conclusion in about November 2011. (Doc. 110-1 at 219-20). Plaintiffs' counsel further stated that Ablan retained a limited number of TSG's financial statements and tax returns which were produced to Defendants in this case. Id. at 2. On June 16, 2014, Defendants learned for the first time that Ablan had located eight (8) CD-ROMs containing documents produced by TSG in the State Court Litigation. (Doc. 118-1 at 8). Plaintiffs did not produce the TSG documents contained on the eight (8) CD-ROMs until June 26, 2014. Plaintiffs do not deny that the documents included in their June 26, 2014 production were responsive to Defendants' First Set of Requests for Production of Documents served on December 12, 2012. (Docs. 110-1 at 232-261, 118 at 2-3). The Court finds that Plaintiffs violated Rule 26(e) by failing to timely supplement their production in response to Defendants' First Set of Requests for Production of Documents. Thus, Rule 37 prohibits Plaintiffs from using any new information on the

eight (8) CD-ROMS "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs offer no justification for failing to timely produce the TSG documents they received during the State Court Litigation which were in their actual possession. Plaintiffs state that while preparing their response to Defendants' spoliation motion, "Plaintiffs' counsel requested Plaintiffs to again search their files to determine whether they retained any documents produced by TSG in the State Court Lawsuit." (Doc. 118 at 2). Plaintiffs continue: "After another thorough search, Ablan located eight (8) CD-ROMS's containing TSG's documents, one of which was a CD-ROM which contained emails that Protek had copied for Ablan from TSG's computer storage drives." Id. at 2-3. According to Plaintiffs, "[b]efore counsel's request, Ablan was unaware that he even had the CD-ROMs since they were not a part of TSG files that had been produced to Defendants." Id. at 3. There is no explanation in the record as to why Plaintiffs' initial search failed to uncover the eight (8) CD-ROMs of TSG documents.

The remaining question is whether the failure to timely produce the eight (8) CD-ROMs was harmless. The following factors guide the court's discretion in deciding whether the non-compliance with Rule 26 was harmless: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. Tribble v. Evangelides, 670 F.3d 753, 760 (7th Cir. 2010).

As to the first factor, Plaintiffs dispute any prejudice to Defendants from the late production of the eight (8) CD-ROMS, contending that those documents largely duplicated Plaintiffs' prior production, were already in Defendants' possession, or are irrelevant to the issues in this lawsuit. Plaintiffs point out that Defendants' summary judgment materials did not rely on a single document that was contained on the eight (8) CD-ROMs of TSG discovery material that was not produced

by Plaintiffs prior to June 26, 2014. (Doc. 151 at 3). Defendants respond that Plaintiffs improperly conflate summary judgment evidence with trial evidence. If the case proceeds to trial, Defendants state that they are not limited to the evidence presented at summary judgment and they may rely on some of the 14,000 belatedly produced documents at trial.

In any event, Defendants would be prejudiced if Plaintiffs were allowed to rely on new information disclosed for the first time in their untimely production of TSG discovery documents to defeat summary judgment or at trial. It is too late to cure the problem of Plaintiffs' tardy production. Discovery has closed and summary judgment has been filed. Plaintiffs' late production prevented Defendants from having a full and fair opportunity to investigate or seek additional discovery relative to any new information contained on the eight (8) CD-ROMs. As to the fourth factor, there is no indication that Plaintiffs acted in bad faith in failing to disclose the eight (8) CD-ROMs earlier. There is a basis for inferring wilfulness in Plaintiffs' late disclosure where Plaintiffs produced 14,000 pages of documents after fact discovery closed and offered no justification for their untimely production. Accordingly, Plaintiffs should be barred from using at summary judgment or at trial any new information that was contained on the eight (8) CD-ROMs that was not previously produced by Plaintiff or already in Defendants' possession.

Defendants contend that Plaintiff committed another discovery violation by failing to produce or make available documents held by their vendor, Protek. Pursuant to court order in the State Court Litigation, TSG ultimately produced its computer servers to Protek so that Ablan could conduct a search for relevant documents. Protek made an image of TSG's hard drives and TSG removed any privileged materials from the emails made available to Ablan. As the Court understands it, Protek established a temporary website through which Ablan, as well as TSG, could search TSG's emails. During the State Court Litigation, Plaintiffs copied between 300 and 500 e-mail communications between TSG and Start Investments ("Stark") from the FTP server. (Doc.

124-3 at 4-5). One of the eight (8) CD-ROMs Plaintiffs produced to Defendants on June 26, 2014 contained the TSG-Stark emails that Protek had copied for Ablan from TSG's computer storage drives. (Doc. 118 at 3).

Defendants argue that Plaintiffs have failed to produce the TSG documents under their control with Protek. Plaintiffs admit that Protek currently possesses certain computer media of TSG consisting of images of TSG's storage drives but argue that they have no obligation to produce TSG materials in the possession of Protek. Plaintiffs explain that they have no duty to acquire and produce TSG's computer media that they did not own and of which Plaintiffs never had possession, custody, or control. Plaintiffs maintain that if Defendants want to obtain access to TSG's computer media in the possession of Protek, Defendants must obtain it by way of subpoena from Protek or TSG.[1]

Under Rule 34, Plaintiffs were required to produce pertinent documents in their custody or control even if not in their physical possession. The test is whether "the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy." Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2210 (1994); Dexia Credit Local v. Rogan, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (stating "[o]n the issue of control, it is 'well-settled that a party need not have actual possession of the documents to be deemed in control of them;' rather, the 'test is whether the party has a legal right to obtain them.'"). The relevant issue is whether a party can "order" the production of the documents. . See Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1426 (7th Cir. 1993) (noting that the plaintiffs did not have custody or control because they "could not order [a subcontractor] to surrender" the requested documents).

---

[1] Defendants state that they attempted to subpoena TSG in January 2013 but were unsuccessful because TSG was out of business by that time. (Doc. 124 at 5 n.3).

On the current record, the Court cannot find that Plaintiffs have sufficient control over the TSG documents in Protek's possession to warrant sanctions. While Plaintiffs retained Protek during the State Court Litigation to assist with the collection of documents from TSG, the exact terms of that relationship have not been disclosed. During the State Court Litigation, "approximately 350,000 [TSG] documents were made available to plaintiff through Protek's FTP site," but there has been no showing that Plaintiffs currently have access to the FTP server. (Doc. 124-3 at 4). Plaintiffs' counsel has explained that Ablan had access to the FTP server with the TSG documents for a month and a half during the State Court Litigation. Id. at 5. TSG's counsel asserts that Ablan is not authorized to release TSG's information contained on Protek's server. Id. at 5. It has not been established that Ablan has access to the Protek server and is authorized to release information contained on the Protek server or to permit others to access the information contained therein. Therefore, Plaintiffs should not be sanctioned for failing to produce or make available TSG documents held by Protek.

Defendants' counsel took the position that Plaintiffs should be required to subpoena the TSG documents from Protek. (Doc. 124-3). Defendants cite no authority, nor is the Court aware of any, requiring a responding party who does not have possession, custody, or control over responsive documents to subpoena those records from an independent third party in order to respond to a request for production. However, Defendants could have sought leave to subpoena the production of the subject documents from Protek in advance of the summary judgment briefing. Defendants have had notice since at least April 17, 2014 that TSG documents may have been preserved by Protek. (Doc. 110 at 8 n.10). Defendants state that they contacted Protek regarding the TSG documents, but Protek refused to even confirm the existence of the TSG documents because Defendants are not Protek's client. (Doc. 124 at 5 n. 3). Defendants did not seek an extension of the discovery deadline so that they could subpoena the information from Protek. Such

a request would very likely have been granted. Defendants argue that they should not have been required to subpoena Protek, but Defendants made a tactical decision not to seek leave to subpoena Protek after their attempts to get Plaintiffs to produce the information proved inadequate. Defendants' claim that they have been "deprived of critical TSG documents," but their own failure to pursue the TSG documents from Protek implies that Defendants do not believe the missing documents contain new information or are particularly helpful to their case. (Doc. 149 at 2-3). The Court therefore concludes that Defendants have also not been prejudiced by Plaintiffs' failure to timely disclose Protek's retention of TSG documents or by their not having the TSG documents in Protek's possession.

Defendants propose an additional sanction. Defendants request an order requiring Plaintiffs to pay Defendants' expert costs associated with reviewing the TSG documents contained on the eight (8) CD-ROMs belatedly produced. Plaintiffs produced these TSG documents after Defendants' served their expert reports. Defendants argue that Plaintiffs should reimburse Defendants for the costs of Defendants' experts reviewing the TSG documents to determine how they impact their opinions. As Defendants' experts would have reviewed any new information on the eight (8) CD-ROMs even if Plaintiffs' production had been timely, no excess amount of costs resulted from the late production. There is also no evidence that Defendants' experts had to revise their expert reports due to Plaintiffs' belated production of the eight (8) CD-ROMs. Because there is no evidence that Plaintiffs' tardy production caused Defendants' excess expert costs, the request for expert costs as sanctions should be denied.

Defendants also seek an award of their attorney's fees incurred in filing their motion. Federal Rule of Civil Procedure 37(a)(5) applies to the award of expenses. Rule 37(a)(5)(A) states that "if the . . . requested discovery is provided after the motion was filed . . . the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable

expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The rule further states that the "court must not order this payment if (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Id.

Attorney's fees are warranted because none of the exceptions apply in this case. Defendants attempted in good faith to obtain the TSG documents from Plaintiffs through their requests for production of documents. Plaintiffs produced the eight (8) CD-ROMs containing TSG documents produced in the State Court Litigation only after Defendants' motion for sanctions was filed. Plaintiffs' late disclosure therefore caused Defendants to incur the expense of a motion. Plaintiffs' explanation that "[a]fter another thorough search, Ablan located eight (8) CD-ROMs containing TSG's documents" and "[b]efore counsel's request, Ablan was unaware that he even had the CD-ROMS since they were not part of TSG files that had been produced to Defendants" is unacceptable. Plaintiffs' nondisclosure of the eight (8) CD-ROMs containing TSG's documents during discovery was therefore not justified. Finally, there are not any circumstances that would make an award of attorney fees and expenses unjust. Pursuant to Rule 37(a)(5)(A), Plaintiffs should pay the reasonable expenses, including attorney's fees, Defendants incurred in bringing the instant motion.

## **CONCLUSION**

Defendants' Motion for Sanctions [109] should be granted in part and denied in part. Defendants' request to bar Plaintiffs from relying on or introducing any new information contained on the eight (8) CD-ROMs at summary judgment or trial should be granted. The Court further recommends that Defendants be awarded their reasonable attorneys' fees incurred in bringing this motion. Defendants shall file a fee petition with this Court by December 8, 2014. Plaintiffs may

file any objection to the fee petition by December 15, 2014. Defendants' request for their expert costs associated with reviewing new information contained on the eight (8) CD-ROMs should be denied.

Date: November 24, 2014          /s/ Daniel G. Martin